

Cite as 2016 Ark. App. 590

# ARKANSAS COURT OF APPEALS

DIVISIONS II, III & IV
**No.** CV-15-918

| | |
|---|---|
| | **Opinion Delivered** DECEMBER 7, 2016 |
| CHELSEA S. HARLEY | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTEENTH DIVISION |
| APPELLANT | [NO. 60DR-07-5833] |
| V. | |
| WYNDHAM S. DEMPSTER, SR. | HONORABLE VANN SMITH, JUDGE |
| APPELLEE | |
| | DISMISSED |

## DAVID M. GLOVER, Judge

Chelsea Harley and Wyndham Dempster are the parents of two children, L.D. and W.D. The Office of Child Support Enforcement (OCSE) pursued an action against Dempster to enforce his obligation to support the children. On January 31, 2008, the trial court entered a default judgment of support, ordering Dempster to pay designated amounts to meet his child-support obligation. On March 19, 2015, OCSE filed a motion to modify support and for past-due child support. Following a hearing, the trial court entered an order of modification on July 16, 2015. The order increased Dempster's child-support obligation to $160 a week and ordered him to pay $7,079 in child-support arrearage, after crediting him $9,464 for the period of time the parties lived together and $6,000 for payments made to the children's school by his parents.

This appeal followed. It was filed by Chelsea as appellant, not OCSE. Chelsea contends 1) the trial court erred in allowing Dempster to claim the affirmative defense of

SLIP OPINION

set-off for the first time at trial because he had failed to raise it in a pleading; 2) the trial court abused its discretion in allowing an offset because its decision did not conform to Arkansas Code Annotated section 9-14-236; and 3) the trial court's determination that the children's grandparents' payment of their school tuition constituted support was clearly erroneous. We are unable to determine that Chelsea has standing to bring this appeal. For this reason, we cannot address the merits of her arguments and must dismiss the appeal. We do not dismiss appeals lightly; this appeal has generated a vigorous debate among nine judges on our court. A majority of the nine judges has concluded we have no choice but to dismiss this appeal because it is not apparent from the record before us that Chelsea has standing to bring it.

The authors of *Arkansas Civil Practice & Procedure* explain in part:

> As a threshold matter, the appellant must have standing to appeal. This is not a problem in most cases. If the appellant was a party to the action in the trial court and aggrieved by the judgment, the standing requirement is satisfied.
>         . . . .
> A person who was not a party to the action below generally lacks standing to appeal. However, a person whose pecuniary interests are affected by the judgment has standing to seek appellate review even though he or she was never made a party.

David Newbern, John Watkins & D.P. Marshall, Jr., *Arkansas Civil Practice and Procedure* § 40:1 (5th ed. 2010). In *Phillipy v. O'Reilly*, 95 Ark. App. 264, 266–67, 236 S.W.3d 548, 550–51 (2006), our court explained,

> Guidance on standing is provided by three recent cases from our supreme court that cite *In re $3,166,199*, 337 Ark. 74, 987 S.W.2d 663 (1999). In that case, the supreme court reiterated the general rule regarding standing, "that an appellate court cannot act upon an appeal taken by one not a party to the action below." *Id.* at 79, 987 S.W.2d at 666. Under our rules of civil procedure, party status is generally obtained by initiating an action through filing a complaint or responding to a complaint by answer. *Id.*; *see also Cogburn v. Wolfenbarger*, 85 Ark. App. 206, 148 S.W.3d 787 (2004) (finding standing where an individual was served with notice of

a hearing, filed an answer, and appeared at both the temporary and permanent hearings to contest the guardianship). It is also possible to become a party by intervention under Ark. R. Civ. P. 24 (2005), or by joinder under Ark. R. Civ. P. 19 (2005). *In re $3,166,199*, *supra.*; *see also Beebe v. Fountain Lake School Dist.*, 365 Ark. 536, 231 S.W.3d 628 (2006) (finding standing based on collective basis related to prior party status, intervention, and constitutionality of a statute). In this case, none of these situations apply to appellant; therefore, he does not have standing as a party to the action to bring this appeal.

Arkansas appellate courts have recognized two other circumstances in which a nonparty may gain standing to pursue appellate review of a trial court's orders. The first occurs when a nonparty seeks relief under Ark. R. Civ. P. 60(k) (2005), which provides that an independent action may be filed to relieve a person from judgment who was not actually served with process. *In re $3,166,199*, *supra*. Appellant is not seeking this type of relief, as nothing was required of him pursuant to the trial court's order, so this exception is likewise inapplicable.

The final possible scenario would apply in the unique set of facts where any appellant, though not a party, has a pecuniary interest affected by the court's disposition of the matter below. In *Swindle v. Benton County Circuit Court*, 363 Ark. 118, 211 S.W.3d 522 (2005), our supreme court determined that an appellant had standing based upon this "pecuniary interest" exception where he was ordered by the circuit court to reimburse the public defender's office $150 for interpreting services that were provided to his Spanish-speaking client. The trial court had stated that the appellant was privately retained by his client and that it was his responsibility to make sure that the fee was paid. The supreme court addressed the standing issue, although it was not raised by the appellee, and found that because the costs were assessed against the appellant personally, he had standing as a nonparty to request appellate review. Additionally, in *Springdale School Dist. No. 50 v. The Evans Law Firm, P.A.*, 360 Ark. 279, 200 S.W.3d 917 (2005), the supreme court determined that an attorney had standing to bring an appeal related to the circuit court's disposition of his attorney's fee in a case. The supreme court first pointed out that the attorney had specifically intervened with respect to the attorney's fee issues, and that would likely have been sufficient; however, the supreme court also addressed the fact that his direct pecuniary interest gave him standing to bring the appeal with respect to the attorney's fee issue.

Thus, in the context of this discussion, the term "party" has distinct and consequential meanings. Here, it is undisputed that Chelsea, as "OCSE Assignor," assigned

to OCSE her rights regarding the child–support arrearage. The July 16, 2015 order she is

attempting to appeal provides, in part,

> 2. The State of Arkansas, Office of Child Support Enforcement, is involved in the establishment and enforcement of a support obligation order herein pursuant to its rights and responsibilities under Ark. Code Ann. § 9-14-210(d) under which CHELSEA S. HARLEY is the recipient of services under Title IV-D of the Social Security Act or has signed a contract for services.
> . . . .

Arkansas Code Annotated section 9-14-210(d) (Repl. 2015), explains

> (d)   The State of Arkansas is the real party in interest for purposes of establishing paternity and securing repayment of benefits paid and assigned past–due support, future support, and costs in actions brought to establish, modify, or enforce an order of support in any of the following circumstances:
> (1)  Whenever public assistance under the transitional employment assistance program, i.e., Temporary Assistance for Needy Families Program, or § 20–77–109 or § 20–77–307 is provided to a dependent child or when child support services continue to be provided under 45 C.F.R. 302.33 as it existed on January 1, 2001;
> (2)  Whenever a contract and assignment for child support services have been entered into for the establishment or enforcement of a child support obligation for which an automatic assignment under § 9-14-109 is not in effect;
> (3)  Whenever duties are imposed on the state in Title IV-D cases pursuant to the Uniform Interstate Family Support Act, § 9-17-101 et seq.; or
> (4)  When a child is placed in the custody of the Department of Human Services and rights have been assigned under § 9-14-109.

Section 9–14–210(e) provides in part that in any action brought to enforce a child–support

obligation, the Department of Human Services or the office, or both, or their contractors,

may employ attorneys, and that an attorney so employed shall represent the interests of the

Department of Human Services or the office and "does not represent the assignor of an

interest set out in subsection (d) of this section." Moreover, "[r]epresentation by the

employed attorney shall not be construed as creating an attorney–client relationship between

the attorney and the assignor of an interest set forth in subsection (d) [.]" Finally, section

9–14–210(f)(2) provides that "for the benefit of the court clerk, in any action brought by

the Department of Human Services or the office, or both, or their contractors, pursuant to subsection (d) of this section, the name of the physical custodian shall be set out in the body of any petition filed and order entered in the matter."

Chelsea is the physical custodian for the children and was clearly an interested person regarding this lawsuit, but she had assigned to OCSE her rights to the child-support arrearage. The State of Arkansas, via OCSE, was the real party in interest pursuant to section 9-14-210(d), and initiated the lawsuit, as plaintiff, against Dempster, as defendant. In the caption of every document filed in the trial court, the State (OCSE) is shown as the plaintiff, Wyndham Dempster is shown as the defendant, and Chelsea Harley is shown as "OCSE Assignor." Chelsea was never a party to the action, and we have been unable to find legal authority to support the notion that an assignor is somehow automatically elevated to party status in order to bring an appeal.

The record before us also does not reveal how Chelsea's pecuniary interests have been affected by the trial court's decision. The July 16, 2015 order does not grant the child-support-arrearage judgment to Chelsea. Instead, it very specifically grants the judgment to OCSE:

> 5. . . . Therefore, *the OCSE is granted Judgment in the amount of $7,079.00 in past due child support as of June 26, 2015.* WYNDHAM S. DEMPSTER, SR. is ordered to pay the sum of $32.00 weekly in addition to current support previously ordered to be applied to said judgment.

(Emphasis added.) Accordingly, the judgment was awarded to OCSE, with no indication that any Title IV funds Chelsea might receive are reduced by the trial court's decision, or that OCSE turns over to her the $32 Dempster has been ordered to pay OCSE weekly, which understandably would have been a larger amount if payment of the entire arrearage

5

SLIP OPINION

had been ordered. In other words, on this record, OCSE's pecuniary interests suffered, but we have no basis for concluding that Chelsea's did. While the dissenting judges may have personal knowledge and experience leading them to the conclusion that Chelsea's pecuniary interests have suffered as a result of the trial court's decision, this information is not apparent from the record before us or from our research of the law.

Neither is Rule 17 of the Arkansas Rules of Civil Procedure applicable to the situation presented by this appeal. It provides in part that

> (a) *Real Party in Interest.* Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian (conservator), bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or the State or any officer thereof or any person authorized by statute to do so may sue in his own name without joining with him the party for whose benefit the action is being brought. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

In the instant case, the real parties in interest were represented at trial–OCSE as plaintiff and Dempster as defendant. Therefore, Rule 17 was never brought into play.

Thus, we are concerned with Chelsea's standing to appeal in light of the fact that she was not the plaintiff below, OCSE was; the child-support-arrearage judgment was not granted to her, it was granted to OCSE; and the record does not demonstrate in any way that her pecuniary interests have suffered as a result of the trial court's decision. We conclude, on the record before us, Chelsea does not have standing to bring this appeal; consequently, we dismiss the appeal.

6



Dismissed.

GRUBER, WHITEAKER, VAUGHT, and HOOFMAN, JJ., agree.

GLADWIN, C.J., and VIRDEN, HIXSON, and BROWN, JJ., dissent.

**ROBERT J. GLADWIN, Chief Judge, dissenting.** I dissent from the majority opinion. I agree with the first point of Judge Virden's dissent. The question of standing was never raised by any of the parties; therefore, this court should not address it. Judge Virden's dissent properly states the reasons we should not address standing, so as to that point, I join Judge Virden.

If we were to get to the merits of the case, I would affirm the circuit court. Because any discussion of the merits is purely dicta, I will be very brief. Chelsea Harley raises three points on appeal:

(1) The trial court erred by allowing appellee to claim the affirmative defense of setoff for the first time at trial because appellee failed to plead the affirmative dense.

(2) The trial court abused its discretion by allowing an offset of appellee's child-support arrears because its decision does not conform to the requirements set forth in Ark. Code Ann. § 9-14-236.

(3) The trial court's determination that appellee's parents' payment of private-school tuition was child support is clearly erroneous because neither the grandparents nor the court believed the payments were in lieu of child support, and there was a verbal contract setting forth the purpose of the tuition payments.

Without going into all of the testimony and arguments made below, I would hold that the first two points were not properly preserved for our review. *See Jackson v. Mundaco Fin. Servs.*, 349 Ark. 84, 76 S.W.3d 819 (holding that affirmative defenses may not be raised

after the conclusion of the trial); *Sloop v. Kiker*, 296 Ark. App. 125, 484 S.W.3d 696 (an appellant must obtain a ruling on an issue in order to preserve the issue for appeal).

As for the third point, I believe that the issue turns on a question of credibility; therefore, we should give deference to the circuit court. We review child-support cases de novo on the record, but we will not reverse the trial court's findings of fact unless they are clearly erroneous. *Stevenson v. Stevenson*, 2011 Ark. App. 552. As a rule, when the amount of child support is at issue, we will not reverse the circuit court absent an abuse of discretion, but we give a circuit court's conclusions of law no deference on appeal. *Id.* A child-support judgment is subject to the equitable defenses that apply to all other judgments. *Ramsey v. Ramsey*, 43 Ark. App. 91, 861 S.W.2d 313 (1993). In a proper case, an equitable defense may apply to prevent the collection of past-due child-support payments. *State Office of Child Support Enf't v. Mitchell*, 61 Ark. App. 54, 964 S.W.2d 218 (1998). Our case law provides that offset is an equitable defense. *Walxer v. First Commercial Bank, N.A.*, 317 Ark. 617, 880 S.W.2d 316 (1994).

Harley argued that the circuit court inquired whether the agreement was in lieu of child support, and Dempster answered, "No." She describes the testimony and argues that the circuit court's decision is clearly erroneous and against public policy. Dempster responded that this argument was never made at trial and that based on the testimony, it is reasonable to assume the grandparents would have done things differently had they known their son's child support would continue to accrue. In review of a circuit court's findings, we give due deference to that court's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Chitwood v. Chitwood*, 2014

SLIP OPINION

Ark. 182, 433 S.W.3d 245. There was sufficient testimony to support the circuit court's ruling and hold that its findings were not clearly erroneous.

BROWN, J., joins.

**BART F. VIRDEN, Judge, dissenting.** Dismissing this appeal is a solution in search of a problem.

I must dissent for two reasons. First, I think this court is in error in dismissing this case for lack of standing. While I strongly feel that Ms. Harley, the mother in this child-support case, has standing to appeal a judgment regarding child support owed to her, I do not feel it is a point that this court should address. We should proceed to the merits of the appeal. Our supreme court has held that standing is not jurisdictional, and thus I do not believe we should raise the issue sua sponte and certainly should not deny her the opportunity to appeal. In *Pulaski County v. Carriage Creek Property Owners Improvement District No. 639*, 319 Ark. 12, 888 S.W.2d 652 (1994), the supreme court held,

> The County first argues that the Circuit Court lacked jurisdiction of the dispute because the District was not aggrieved by the ruling of the County Court. That argument was not addressed to the Circuit Court. According to this argument, as the County Court did not order the District to pay the taxes, the District was not aggrieved and had nothing from which to appeal. The County equates lack of standing with lack of jurisdiction but cites no authority supporting that proposition.
>
> As we stated in *Arkansas State Bd. of Ed. v. Magnolia Sch. Dist. No. 14*, 298 Ark. 603, 769 S.W.2d 419 (1989), we are unaware of any authority in this Court holding that lack of standing deprives a court of jurisdiction. *See also State v. Houpt*, 302 Ark. 188, 788 S.W.2d 239 (1990). If the issue were one of jurisdiction of the subject matter, we would address it despite the fact that it was not raised before the Trial Court. As it is not such an issue, we decline to address it for the first time on appeal. *See Truhe v. Grimes*, 318 Ark. 117, 884 S.W.2d 255 (1994); *City of Hot Springs Ad. & Promotion Comm'n v. Cole*, 317 Ark. 269, 878 S.W.2d 371 (1994).

In the present case, none of the parties raised a question in the trial court, or before us on appeal, regarding standing. This is the case even if the only "parties," as defined by the majority, were OCSE and Mr. Dempster. Historically, our supreme court has never treated standing as a matter of subject-matter jurisdiction. *Chubb Lloyd Ins. Co. v. Miller Cty. Cir. Ct., Third Div.*, 2010 Ark. 119, 361 S.W.3d 809. When the issue of standing is not properly developed below, the appellate courts do not address it on appeal. *Harrill & Sutter, PLLC v. Farrar*, 2012 Ark. 180, 402 S.W.3d 511. Thus, I believe our court should address the merits of this appeal.

To the extent that our court does address standing, I join in the reasoning expressed in Judge Hixson's dissent. Finding that Ms. Harley has no pecuniary interest in the obligation of Mr. Dempster to support their children is pure fiction. It is akin to finding that the world is flat simply because the record doesn't contain a finding that it is round. No one raised an issue of Ms. Harley having a pecuniary interest in the matter because everyone involved in the case knew she did. OCSE performs a valuable service in collecting child-support arrearages for custodial parents who may not be able to hire a private attorney. It does not *become* the custodial parent and receive the support. Were that the case, i.e., if the custodial parent was not to receive the court-ordered support, why bother asking OCSE to help collect it?

As a second basis for my dissent, I believe the trial court's decision to credit Mr. Dempster's parents' payments of private-school tuition against the child support Mr. Dempster was ordered to, but failed to, pay was clearly erroneous. Ms. Harley received some form of government assistance to help provide for her children. Mr. Dempster had

10

been ordered to pay support for the parties' children. He did not do so. OCSE filed a motion to modify the support and obtain a judgment for the support not paid. Mr. Dempster failed to respond, and a judgment was entered against him. He was again ordered to pay support and to pay his arrears. He did not do so. OCSE again filed a motion seeking a judgment against him. Again, he failed to respond, but he did appear at the hearing on the matter.

Ms. Harley did not have an attorney at the hearing, and the task of advocating for the past-due child support was undertaken by OCSE. As set out in the majority opinion, a simple math calculation showed Mr. Dempster delinquent in his child support in the amount of about $22,000. By agreement of all concerned, including Ms. Harley, whom the majority finds was not a party and had no pecuniary interest in the proceedings, the amount due was reduced by over $9,000 due to cohabitation. Or, as the trial court stated in its order, "That the *parties* resided together for a period of around 21 months after entry of the order of support, and the Defendant is entitled to $9,465.00 credit, which further reduces the arrears to $13,079.60." (Emphasis added.) I feel certain that the "party" to which the trial court referred was not OCSE.

From that amount, the trial court further reduced the judgment by $6,000. The trial court referred to the reduction as "support paid by the Defendant's parents for Montessori school for the minor children."

Ms. Harley appeals that decision on three separate grounds:

1. Setoff is an affirmative defense that must be raised in the responsive pleading or is waived pursuant to Ark. R. Civ. P. 8. In this case, Mr. Dempster didn't answer at all, much less plead an affirmative defense;

2. Arkansas Code Annotated section 9-14-236 states, "In any action involving the support of any minor child or children, the moving party *shall* be entitled to

recover the full amount of accrued child support arrearages from the date of the initial support order until the filing of the action." (Emphasis added.) Thus, she argues the trial court did not have the authority to reduce the judgment to less than the full amount due; and

3. The trial court clearly erred in finding the private-school payments by Mr. Dempster's parents were "child support."

It is my opinion that Ms. Harley's position on all three points is well taken, and the trial court's decision should be reversed. I recognize there can be a division of opinion as to whether the first two arguments were properly preserved for our review. For reasons unnecessary to this dissent, I will not explain why I believe they, in fact, are properly presented to us. Rather, I will address the third point—the trial court's determination that the tuition payments by Mr. Dempster's parents became "support" for the children.

Our review of the trial court's decision is de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Ward v. Doss*, 361 Ark. 153, 205 S.W.3d 767 (2005).[1]

Mr. Dempster did not pay his child support. He was taken to court on at least two occasions. On neither occasion did he bother to answer the summons. Ms. Harley relied on some form of government assistance to care for her children—a reliance no doubt exacerbated by Mr. Dempster's refusal to pay his child support. Enter Mr. Dempster's parents. It was important to them that the children be able to attend private school; as such, they volunteered to pay the tuition. There was some evidence that Mr. Dempster was not even aware of his parents' largesse. No one presented any evidence that the private-school

---

[1]We review the issue of the characterization of the grandparents' tuition payments as child-support payments under the clearly erroneous standard of review because it is a factual question.

payments made by Mr. Dempster's parents were to be in lieu of support. In fact, all of the testimony made it clear they were not. Even the trial court stated that the school tuition was not child support. While the gesture of Mr. Dempster's parents was magnanimous, it did not put food on the table or shoes on the feet of their grandchildren. To be fair, there was some evidence that they were not aware their son was not supporting his children.

Based on the uncontroverted evidence that no one intended to relieve Mr. Dempster of his obligation to support his children by his parents' paying tuition at a private school, and the uncontroverted amount that he did not pay, I find that the trial court clearly erred and would reverse. Hopefully, our supreme court will be given the opportunity to resolve this question.

**KENNETH S. HIXSON, Judge, dissenting.** Assuming arguendo that we must sua sponte venture into whether Chelsea A. Harley has standing to bring this appeal,[1] I respectfully disagree with the majority's determination that Chelsea Harley does not have standing to bring this appeal. First, Ms. Harley was, in fact, a party to the underlying litigation. And second, Ms. Harley has a pecuniary interest affected by the circuit court's action and therefore has standing to bring this appeal.

---

[1]The issue of whether this court must sua sponte determine standing is one subject of Judge Virden's dissent.

SLIP OPINION

I. *Ms. Harley is a Party to the Litigation*

A chronological review of the pleadings and the record reveals that Ms. Harley was a party to the underlying action, thereby giving her standing to appeal. The style of the case as set forth in the initial complaint for support is as follows:

| | |
|---|---|
| STATE OF ARKANSAS | PLAINTIFF |
| OFFICE OF CHILD SUPPORT ENFORCEMENT | |
| CASE ID: 257162108 | |
| | |
| VS.        NO. DR–2007–5833 | |
| | |
| WYNDHAM S. DEMSPTER, SR. | DEFENDANT |
| | |
| CHELSEA S. HARLEY | OCSE ASSIGNOR |

There are more "parties" in our legal nomenclature than simply plaintiff and defendant, e.g., claimant, counterclaimant, intervenor, garnishee, etc. Here, the style of the case accurately describes her status as "OCSE ASSIGNOR." In the complaint, Ms. Harley is described as the children's mother and custodial parent. It states that Mr. Dempster owes a continuing duty of support based on the fact that "[t]he *Assignor and Defendant executed* an Acknowledgment of Paternity." (Emphasis added.) The complaint further alleged that Mr. Dempster should be required "*to provide the custodial parent*, and when applicable, [OCSE] proof of income for the previous calendar year." (Emphasis added.)

The style of the case as set forth in the 2008 default judgment for support is as follows:

| | |
|---|---|
| STATE OF ARKANSAS | PLAINTIFF |
| OFFICE OF CHILD SUPPORT ENFORCEMENT | |
| OCSE CASE NO. 257162108 | |
| | |
| VS.        NO. DR–2007–5833 | |
| | |
| WYNDHAM S. DEMSPTER, SR. | DEFENDANT |



                CHELSEA S. HARLEY                                                    ASSIGNOR

In paragraph 12 of this order, Ms. Harley is described as "the Assignor, the woman giving birth to the children of the action, has legal custody of the minor children. . . . " Additionally, at the bottom of this order, both OCSE and *Ms. Harley are listed as lienholders.*

The style of the case in the March 19, 2015 motion to modify support and for judgment for past due child support is as follows:

        STATE OF ARKANSAS                                          PLAINTIFF
        OFFICE OF CHILD SUPPORT ENFORCEMENT
        OCSE CASE NO. 257162108

        VS.                          NO. DR–2007–5833

        WYNDHAM S. DEMSPTER, SR.                          DEFENDANT

        CHELSEA S. HARLEY                                          OCSE ASSIGNOR

In this motion, it was alleged in paragraph 2 "[t]hat since the entry of the last Order, a material change in the circumstances *of the parties* ha[d] occurred" because Mr. Dempster's gross income had changed by more than twenty percent.  (Emphasis added.)  Paragraph 3 states "[t]hat WYNDHAM S. DEMSPTER SR has accrued a total past due child support in this matter in the amount of $26,036.00 as of FEBRUARY 28, 2015 and that *OCSE and/or its assignor* is entitled to a judgment for said amount[.]"  (Emphasis added.)  Again, in this pleading, Ms. Harley is listed in the style of the case.  Furthermore, and perhaps more importantly, in paragraph 2, the motion states that there had been a material change in the circumstances of *the parties*.  The term "parties" clearly refers to both Mr. Dempster and Ms. Harley.  Finally, in paragraph 3 of this pleading, OCSE had requested a judgment in the amount of $26,036.00 in favor of "*OCSE and/or its assignor.*"  (Emphasis added.)

During the modification hearing, there was testimony presented that Ms. Harley had "no objection" to giving Mr. Dempster credit for child-support arrearage for the time that they lived together. Additionally, in OCSE's closing arguments, counsel stated that "Ms. Harley has already given him credit for the times that they lived together[.]" These statements are inconsistent with the majority's opinion that Ms. Harley was not a party. If Ms. Harley was not a party, only OCSE's objections or concessions would have been relevant, and there would be no reason to introduce Ms. Harley's willingness to give a credit.

In the letter accompanying a draft of the order for modification submitted by OCSE's counsel as ordered by the circuit court at the conclusion of the hearing, OCSE listed the case reference as "Re: State of Arkansas, *OCSE/Chelsea Harley* vs. Wyndham Dempster Sr." (Emphasis added.) This reference again supports the notion that Ms. Harley was not a stranger to this case but was indeed a party.

Additionally, the style of the July 16, 2016 order for modification is as follows:

| | |
|---|---|
| STATE OF ARKANSAS | PLAINTIFF |
| OFFICE OF CHILD SUPPORT ENFORCEMENT | |
| OCSE CASE NO. 257 162 108 | |
| | |
| VS.             NO. 60DR-07-5833 | |
| | |
| WYNDHAM S. DEMSPTER, SR. | DEFENDANT |
| | |
| CHELSEA S. HARLEY | OCSE ASSIGNOR |

In this order, Ms. Harley is again listed in the style of the case as "OCSE Assignor." After the preamble stating that OCSE and Mr. Dempster appeared through their attorneys, the order states, "[t]he Assignor, CHELSEA S. HARLEY, also appeared." In paragraph 5 of

the order, the court unambiguously stated "[t]hat the records of the OCSE show that the Defendant is behind in his child support obligation in the amount of $22,544.60 as of June 26, 2015. *That the parties resided together* for a period of around 21 months after the entry of the order[.]" (Emphasis added.) It is clear from the circuit court's own language that it considered Ms. Harley as a "party."

After the circuit court had filed its order of modification, Ms. Lisa C. Ballard entered her appearance without objection as the "attorney for the OCSE Assignor, Chelsea Harley" and directed that all future notices and pleadings be sent to her. Furthermore, the court reporter's certificate reflects that the style of this case is "STATE OF ARKANSAS, *OFFICE OF CHILD SUPPORT ENFORCEMENT/CHELSEA S. HARLEY* V. WYNDHAM S. DEMPSTER, SR." (Emphasis added.) The certificate also states that the "cost incurred by *Plaintiff/Chelsea Harley* for said record was $391.90." (Emphasis added.)

I would find that Ms. Harley was, in fact, a party in that she was clearly listed as either an "Assignor" or an "OCSE Assignor" in the style and caption of each pleading, wherein *parties* are typically listed. Additionally, Ms. Harley was referred to as a "party" by OCSE's pleadings, and on several occasions the party denomination of "OCSE/Chelsea S. Harley" was used. OCSE pleaded that Mr. Dempster should "*provide the custodial parent*, and when applicable, [OCSE] proof of income for the previous calendar year." (Emphasis added.) Finally, Ms. Harley was referred to as a "party" by the circuit court in its orders when it stated that there was "a material change in the circumstances *of the parties*" and when it stated that "*the parties resided together* for a period of around 21 months after the entry of the order."

17

 

(Emphasis added.)  Thus, in my opinion, by all rational deduction, Ms. Harley was, in fact, a party to the litigation below and has standing to bring this appeal.

In conclusion on this point, I agree wholeheartedly with the majority's declaration that they have been unable to find legal authority to support the notion that "an assignor is somehow automatically elevated to party status in order to bring an appeal."  However, I do not find that Ms. Harley was automatically elevated to party status solely due to her status as assignor; I would find she was a party for the myriad of details stated immediately above.

## II.  *Ms. Harley is a Real Party in Interest*

Alternatively, even if I were to conclude that Ms. Harley was not a party, she has standing to bring this appeal because she has a pecuniary interest in this litigation.  I start by acknowledging that the majority opinion accurately sets forth the general rules pertaining to standing and that the State of Arkansas is the real party in interest.  However, I disagree with the majority's analysis of the facts and law herein as it pertains to the pecuniary-interest exception to the rules related to standing.  The concept of the pecuniary-interest exception was discussed thoroughly in *In re $3,166,199*, 337 Ark. 74, 987 S.W.2d 663 (1999).  There, our supreme court stated that there are at least two exceptions to the rule that an individual must have been a party below to have standing on appeal.

> The threshold issue for this appeal is Arkansas Highway Police's standing to object to the trial court's actions on appeal in that they were not a party to the proceedings below.  The general rule regarding standing is that an appellate court cannot act upon an appeal taken by one not a party to the action below. . . . However, we have recognized two other circumstances in which a nonparty may gain standing to pursue appellate review of a trial court's orders. . . .  *The other circumstance is the unique set of facts where any appellant, though not a party, has a pecuniary interest affected by the court's disposition of the matter below.*

18

*In re $3,166,199*, 337 Ark. 74, 79–80, 987 S.W.2d 663, 666 (1999) (emphasis added). Hence, the issue here is whether Ms. Harley "has a pecuniary interest affected by the court's disposition of the matter below." *Id.* The majority concludes that the record does not reflect that Ms. Harley has a pecuniary interest in the litigation below for past-due-child support payments. I, on the other hand, conclude that the record below does support the conclusion that she does, in fact, have a pecuniary interest.

There are at least two cases supporting the application of the pecuniary-interest exception. In *Swindle v. Benton County Circuit Court*, 363 Ark. 118, 211 S.W.3d 522 (2005), Swindle was not a party to the underlying litigation; rather, he was an attorney. The circuit court assessed costs against Swindle and ordered Swindle to pay the public defender's office $150 for interpreting services that were provided to his Spanish-speaking client. *Id.* Swindle appealed, and our supreme court found that Swindle had standing as a nonparty to appeal because the costs were assessed against the appellant personally, thereby giving Swindle a pecuniary interest in the litigation below. *Id.*

Our supreme court also found that the pecuniary-interest exception applied in *In re $3,166,199*, *supra*. *In re $3,166,199* involved a civil-forfeiture action, wherein the Crittenden County Prosecuting Attorney and the Arkansas Highway Police each claimed ownership of the $3,166,199 that had been seized in a drug-related traffic stop. *Id.* The Arkansas Highway Police was *not* a party to the forfeiture litigation below. *Id.* The Arkansas Highway Police appealed the circuit court's decision that awarded the money to the Crittenden County Prosecuting Attorney. *Id.* On appeal, our supreme court stated that the threshold issue for the appeal was whether the Arkansas Highway Police had standing

to object to the circuit court's actions on appeal in that they were not a party to the proceedings below. The supreme court held that the Arkansas Highway Police was entitled to standing because it had a pecuniary interest in the $3,166,199.

> It is undisputed that AHP, for its role in the seizure, is entitled to some portion of the *res* pursuant to Ark. Code Ann. § 5-64-505(k)(2)(iii). The amount will be impacted by pending litigation in this court and in federal court. *We hold, therefore, that AHP has a pecuniary interest affected by the court's action and therefore has standing to bring this appeal.*

*In re $3,166,199*, 337 Ark. 74, 79–80, 987 S.W.2d 663, 666 (1999) (emphasis added).

Here, Ms. Harley likewise has a pecuniary interest in the circuit court's decision because she is entitled to a portion of the child-support arrearage that was awarded. The record reflects the following:

- The circuit court recognized that Ms. Harley had an interest in the original default judgment when it listed both OCSE and *Ms. Harley as lienholders*.

- In an affidavit dated January 29, 2008, provided by OCSE, Child Support Investigator Jonathan McFadden stated in paragraph 2 that "the Defendant did not pay $968.00 of the support required . . . from December 14, 2007 through February 1, 2008. *The State of Arkansas is entitled to $0.00 of said amount as reimbursement of AFDC or TEA benefits.*" (Emphasis added.) OCSE stated that the State was not entitled to any reimbursement in its affidavit, therefore, it cannot be said that Ms. Harley did not have an interest in obtaining a judgment for the child-support arrearage.

- In its Motion to Modify Support, OCSE pleaded that "*OCSE and/or its assignor* is entitled to a judgment for said amount[.]" (Emphasis added.)

- The court reporter's certificate states that the "cost incurred by *Plaintiff/Chelsea Harley* for said record was $391.90." (Emphasis added.)

Therefore, based on the record as a whole, I conclude that Ms. Harley has a pecuniary interest and has standing to bring this appeal.

I would be remiss if I did not respond to the majority's declaration: "While the dissenting judges may have personal knowledge and experience leading them to the conclusion that Chelsea's pecuniary interests have suffered as a result of the trial court's decision, this information is not apparent from the record before us or from our research of the law." I disagree with this observation and feel compelled to underscore that each of my justifications for concluding Ms. Harley has a pecuniary interest comes directly from the record and not from any personal knowledge or experience.

The consequence of the majority opinion is a very high price for Ms. Harley to pay. There is nothing in the record to distinguish this case from dozens of other typical OCSE cases where, in the style of the cases, OCSE is listed as the "Plaintiff" and the creditor/unpaid parent is listed as the "OCSE Assignor" and where the "OCSE Assignor" places his or her fate in the hands and discernment of the Office of Child Support Enforcement. While the majority may deem that it needs a sacrificial exemplar to clarify the denomination of "party" for purposes of appeal in such a case, in my opinion, Ms. Harley should not be that sacrifice. The record is sufficiently clear that Ms. Harley has standing to fight for the unpaid child support due to her.

After concluding that Ms. Harley has standing to appeal, I would reverse and remand this case to the circuit court on the merits of the appeal, finding that the circuit court abused its discretion by offsetting unpaid child support with the tuition payments made by the grandparents.

*Ballard & Ballard, P.A.*, by: *Andrew D. Ballard*, for appellant.

*Hicks & Associates, P.A.*, by: *Carrol Ann Hicks*, for appellee.